Marlene J. Traudt, Administratrix of the Estate of Robert W. Traudt, Deceased, Plaintiff-Appellant, v. City of Chicago, a Municipal Corporation, Butler Aviation, a Corporation, and D. E. C. Aviation, a Foreign Corporation, Defendants-Appellees.

Gen. No. 52,168.

First District, First Division.

July 29, 1968.

Rehearing denied September 17, 1968.

Miller, Green & Frazin, of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (William P. Butler and Thomas W. Dempsey, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a wrongful death action. On December 24, 1963, the decedent, Robert W. Traudt, was piloting his private airplane with the intention of landing at Meigs Field, a public airport located in Chicago on a man-made island or peninsula in Lake Michigan. The airplane "became mechanically inoperative," and he made an emergency landing upon Lake Michigan adjacent to Meigs Field and was drowned.

Plaintiff, as administratrix of the decedent's estate, and in a 3-count complaint, sued (1) the City of Chicago, as the owner of Meigs Field; (2) Butler Aviation Corporation, as the "licensee, tenant, manager or agent" of the airport; and (3) D. E. C. Aviation Corporation, from whom the decedent purchased the airplane, which was delivered to him on December 24, 1963, at Meigs Field.

Plaintiff's amended complaint alleges substantially that the negligence of the City of Chicago and Butler Aviation resulted in the death of plaintiff's decedent by drowning, because either or both failed to provide and maintain rescue equipment for emergency landings on the lake within close proximity to the airport.

The plaintiff administratrix appeals from an order which struck plaintiff's amended complaint and dismissed the action, with prejudice, as to defendants City of Chicago and Butler Aviation only, because of "plaintiff's failure to state a legal duty owed by these defendants to plaintiff's decedent."

On appeal, plaintiff's determinative contentions are: (A) Defendants owed a duty to plaintiff's decedent to so operate, manage and control said airport so that it would be reasonably safe for plaintiff's decedent to use same and not to unreasonably expose him to danger. (B) Defendants breached their aforesaid duty by failing to provide or have a life boat, a helicopter, a life gun or other safety appurtenances and appliances at said airport for emergency purposes when it knew, or, in the exercise of reasonable care, should have known or foreseen the need

for such appurtenances or appliances, inasmuch as said airport was located on the waters of Lake Michigan.

Plaintiff's authorities on airport operation, management and duties to users include:

8 Am Jur2d 702, Aviation, § 79:

> "The law places on the proprietor of an airport or airfield the obligation to see that it is safe for such aircraft as are entitled to use it, and to give an appropriate warning of any danger or hazard of which the proprietor knows or should know and of which the pilot of an aircraft does not know or may not reasonably be deemed to know. For a breach of this duty, the proprietor may be held liable for injuries to or the death of persons, or damage to property, proximately resulting from the operation of aircraft at the airport or airfield, and since a municipality or county in operating an airport is deemed, in the absence of a statute providing otherwise, to do so in a proprietary rather than a governmental capacity, this is generally considered as true of a public airport as it is of a private one.
>
> "This duty extends to the keeping of the premises in such a reasonably safe condition that the pilot in landing his aircraft will not be unreasonably exposed to any danger, and the owner of an airport has a duty to keep the runway free from obstructions, so far as possible, or to place markers warning pilots of danger."

Peavey v. City of Miami, 146 Fla 629, 1 So2d 614, 617 (1941):

> ". . . the law imposes a duty to use proper care, precaution, and diligence in providing and maintaining the accommodations in a reasonably safe condition for the purposes to which they are adapted, and are apparently designed to be used. If the

419

accommodations for any reason are not reasonably suitable and safe for the purposes for which they may ordinarily and apparently be used in a customary way, the public should be excluded from their use, or appropriate notice of their unsuitable or unsafe condition should be so given as to warn persons of dangers in using them. A failure to perform these duties or any of them may be negligence that, if it proximately results in injury to another without his fault, will constitute a cause of action for compensatory damages."

Mills v. Orcas Power & Light Co., 56 Wash2d 807, 355 P2d 781, 784 (1960):

"That the primary duty of marking the poles and lines to caution landing aircraft was upon the owners and operators of the airport itself, there can be little doubt. A public airfield extends an implied invitation to aircraft, and the duty owed, therefore, is one of reasonable care to see that the premises are safe."

And at p 785, it is stated:

"The airport proprietor's duty to maintain safe conditions for craft using the field extends not only to the runway itself, but to the take-off and landing flight ways. These are as much a part of the airport, and thus as much a part of the proprietor's responsibility, as the runway itself."

From the foregoing, plaintiff argues that the basic duty of defendants to plaintiff's decedent was to provide a reasonably safe airport for his use and not to unreasonably expose him to danger—that an airport that is without adequate rescue equipment and facilities is unsafe and unreasonably exposes persons using that airport to danger—further, this basic duty is not restricted

to the confines of the airport itself, but extends beyond the field to adjacent areas, as in the instant case, in the lake and within 200 feet from the airport. In substance, plaintiff argues that the immediate lake water is part of Meigs Field and within the control of the airport authorities, and if water rescue equipment had been available and used, the decedent would have been rescued.

Plaintiff also maintains that the defendants should have seen the need for rescue equipment, as common sense dictates that emergencies are bound to arise which would necessitate a ditching by an aircraft into the lake. In support of the premise that the rule of foreseeability should be applied here, plaintiff cites Kahn v. James Burton Co., 5 Ill2d 614, 622, 126 NE2d 836 (1955):

> "All men are presumed to know those things which are matters of common knowledge and must be held, in the absence of actual knowledge or notice, to have reasonably anticipated such occurrences as in the ordinary nature of things reasonable men should know will probably occur. Every person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence of his act, and the law is presumed to furnish a remedy for the redress of every wrong."

Plaintiff also contends that "the decedent was a business invitee of the defendants who, having paid his landing fee and taken off from defendants' airport, was, at the time of his emergency landing, under radio control of the defendants, attempting to return." From this plaintiff asserts there was a special relationship between the parties sufficient to warrant the extension of defendants' duty to decedent to provide a reasonably safe airport for his use, and to not unreasonably expose him to danger, including the obligation to take steps to effect his

421

rescue in event of an emergency landing on the water adjacent to the field.

Plaintiff's authorities on this point include:

65 CJS, Negligence, § 63(106), p 858:

> "One who sees another in peril, for which he is in no way responsible and which is entirely disconnected from any agency or instrumentality with whose control he is concerned, is not under any legal obligation to attempt to rescue or assist such person, and he need not exercise care to protect such person against the hazards of the perilous situation. However, when some special relation exists between the parties, social policy may justify the imposition of a duty to assist or rescue one in peril."

Decatur Amusement Park Co. v. Porter, 137 Ill App 448 (1907), where it was held that the owner of a lakeside resort could be held liable for failure to take any precautions to prevent one of its guests from drowning. It is said (p 452):

> "Under the authorities we hold that it was the duty of appellant to make reasonable provision to guard against those accidents which common knowledge and experience teach are liable to befall those engaging in the sport which appellant had invited the public to participate in."

L. S. Ayres & Co. v. Hicks (Ind), 40 NE2d 334, 337 (1942):

> "From the above cases it may be deduced that there may be a legal obligation to take positive or affirmative steps to effect the rescue of a person who is helpless and in a situation of peril, when the one proceeded against is a master or an invitor or when the injury resulted from use of an instrumentality under the control of the defendant."

Hutchinson v. Dickie, 162 F2d 103, 106 (1947), where the court said a shipowner had a duty to rescue a passenger who had fallen overboard.

Defendants admit that the law imposes upon the operator a duty to maintain its premises in a reasonably safe condition. Defendants contend that the primary issue is whether the defendants owed a legal duty to plaintiff's decedent to be prepared to go outside the airport to rescue him. They assert that issue is a question of law and not a question of fact. Defendants argue that if there was no duty here to rescue beyond the airport premises, then no cause of action was stated by allegations that the defendants did not possess certain equipment by which a rescue may have been effected.

■ Initially, we are not persuaded that the immediate lake water is part of Meigs Field or under the control of the airport authorities. It is our opinion that at the time of the occurrence, the decedent's status was in the nature of a business invitee to a public airport, and that a "special relationship" then existed between him and the defendants. This "special relationship," which we find here, carried with it a duty toward the deceased invitee to provide a reasonably safe means of ingress to or egress from the airport, notwithstanding the airport authorities were not in control of the adjacent lake waters. Stedman v. Spiros, 23 Ill App2d 69, 83, 161 NE2d 590 (1959); 28 ILP, Negligence, § 53, p 44.

■ Granting a special relationship here, an examination of the amended complaint shows no allegation that airport ingress or egress were involved in the occurrence. There was no allegation that the mechanical failure of the airplane was related to the physical condition of the airport or ingress to it. We conclude the asserted special relationship status applied to the alleged facts shows no breach of any legal duty to the decedent, even though such an occurrence may have been foresee-

able. As said in Moore v. City of Ardmore, 188 Okla 74, 106 P2d 515, 516 (1940):

> "The duty to have means of rescue for those who have the misfortune to be cast into water and to be in danger of drowning may be ever so desirable as a humanitarian principle, but we are convinced it is not a legal duty in a case such as this. . . . The invitee assumes the risks attendant upon the venture into which he enters. It would be illogical to say that the inviter owed the invitee the duty to provide means of rescue from extraordinary risks that come from unusual or uncontrollable sources."

In our opinion, this case calls for the application of the rule that "a mere bystander incurs no liability where he fails to take any action, however negligently or even intentionally, to rescue another in distress." (Lacey v. United States, 98 F Supp 219, 220 (1951); 38 Am Jur, Negligence, § 18; 65 CJS, Negligence, § 63 (104).) Therefore, absent a duty to rescue, the instant defendants had no legal duty to maintain water rescue equipment for water rescue emergencies.

Since, as we have concluded, the trial court was correct in its determination that the amended complaint failed to state a cause of action against these defendants, it follows that their motion to strike was timely and the issue was a matter of law and not a question of fact for a jury.

For the reasons given, the order of the Circuit Court of Cook County dismissing the action, with prejudice, as to defendants City of Chicago and Butler Aviation is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.