Miriam L. Bishop, Administrator of the Estate of David H. Bishop, Deceased, Plaintiff-Appellant, v. City of Chicago, a Municipal Corporation, Defendant-Appellee.

Gen. No. 53,065.

First District, Second Division.

February 3, 1970.

Barnabas F. Sears and Gerald M. Sheridan, Jr., of Chicago (Boodell, Sears, Sugrue & Crowley, of counsel), for appellant.

William P. Butler, Thomas W. Dempsey, and Paul W. Engstrom, of Chicago (Raymond F. Simon, Corporation Counsel of City of Chicago), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This is an action brought for damages in the death of David H. Bishop, plaintiff's intestate. Plaintiff's complaint was dismissed by the trial court on August 3, 1967; plaintiff then filed a second amended complaint which was dismissed by the trial court on February 1, 1968, for failure to allege facts raising a duty to rescue the decedent from Lake Michigan. This appeal is taken from that order.

The issues presented to this court are whether defendant had a duty of exercising reasonable care for the safety of occupants of aircraft approaching Merrill C. Meigs Airfield, located on the shore of Lake Michigan, either by common-law duty, a duty imposed by the public policy of the State of Illinois, a duty voluntarily assumed by defendant, or a duty gratuitously undertaken or impliedly promised by defendant and relied on by decedent. Essentially, the case presents the question of whether the City of Chicago, as manager and controller of Meigs Field, has a duty to maintain and utilize reasonable rescue facilities to assist those aircraft which have fallen into Lake Michigan through no fault of defendant.

The second amended complaint states that Meigs Field is almost entirely surrounded by water and that the defendant knew, or should have known, that aircraft intending to land on the field are compelled to approach the runway over water, and that if forced to land in the water, those in the aircraft would be in great danger of injury or death unless the defendant provided reasonable rescue facilities. It is asserted that the defendant had assumed the duty of providing and utilizing such facilities and the personnel to operate them prior to the date in question.

It appears that on March 29, 1966, David Bishop took off from O'Hare Field, also managed by defendant; that he was apparently flying generally in an easterly direction when he became aware of operational difficulties. He reported his predicament to O'Hare's control tower and received instructions to proceed to Meigs Field. O'Hare's tower then contacted Meigs Field, which in turn alerted the Chicago Fire Department and its helicopter unit who sent a rowboat to attempt a rescue. Bishop was unable to reach the runway and was forced to land in the lake about 500 yards east of the field. He

then got out on the wing of the plane, but by the time the rowboat manned by the Chicago Fire Department reached the scene the plane had sunk and Bishop had drowned.

The complaint alleged "careless, negligent and reckless acts or omissions which proximately caused the death of Plaintiff's intestate"; however, we need not concern ourselves with those details. If the defendant had no duty to rescue, then there is no point in assessing elements which would not be relevant unless that duty existed.

After plaintiff's initial brief was filed in this court Justice Murphy handed down an opinion in Traudt v. City of Chicago, 98 Ill App2d 417, 240 NE2d 188 (leave to appeal denied by Supreme Court), the facts in which were strikingly similar to those in the instant case. The plaintiff's complaint had been stricken and the action dismissed. Plaintiff appealed, urging that her intestate had drowned after making a forced landing in the waters adjacent to Meigs Field, and that the defendants (City of Chicago and Butler Aviation Corporation, the airport's agent) had a duty to have rescued the intestate, which duty they had breached.

In his opinion in Traudt, Justice Murphy concluded that a "special relationship" existed between the defendants and the intestate; that plaintiff's intestate was a business invitee, and as such was entitled to reasonably safe ingress to and egress from the airport. The court pointed out, however, that the complaint included no allegation that ingress or egress was in any way involved in the action. At pages 423–424, the court said:

"There was no allegation that the mechanical failure of the airplane was related to the physical condition of the airport or ingress to it. We conclude the asserted special relationship status applied to the alleged facts shows no breach of any legal duty to

36

the decedent, even though such an occurrence may have been foreseeable. . . .

"In our opinion, this case calls for the application of the rule that 'a mere bystander incurs no liability where he fails to take any action, however negligently or even intentionally, to rescue another in distress.' (Lacey v. United States, 98 F Supp 219, 220 (1951) ; 38 Am Jur, Negligence, § 18; 65 CJS, Negligence, § 63 (104).)"

In the use of the "mere bystander" theory the court has expressed the view that in situations where one is imperiled, but through no negligence of the defendant airfield, the airfield is in no different relationship to passengers on the plane than a stranger. In other words, the unfortunate situation in Traudt, as in the present case, is one for which the defendant is neither responsible nor duty bound to act upon. If it had been alleged that the airfield gave plaintiff's intestate erroneous information which led to the disaster, or that defendant had failed to remove some obstruction from the path of ingress which was causally related to the mishap, the situation would be quite different. However, this was not true in the Traudt case nor the one before us.

The plaintiff suggests that the law should grow to adjust itself to altering conditions in society, and that the present case offers such opportunity and necessity. However, we do not agree that the hazard of flying an airplane over water to make a landing is a condition which of itself necessitates a duty being imposed upon the defendant to maintain and utilize rescue facilities. It does, however, create the duty to make the ingress to and the egress from the airstrip reasonably safe.

The plaintiff has cited a number of statutes and regulations dealing with the duties of those maintaining airfields, and argues that those impose the duty of rescue.

We are not in agreement with this view. All of the statutes and regulations require the maintenance of "safe approach" and further provide that the municipality operating the particular airport have the power to regulate the approach of aircraft into the field. We feel that these rules require only that the defendant has the duty to remove obstructions and to take any and all reasonable precautions that landing and taking off be made safe. It is quite another matter to say that even though the defendant is in no way responsible for the difficulty one may have in attempting a landing, the defendant must nevertheless be considered legally obligated to effectuate a rescue operation. We do not feel that the latter duty exists as a matter of common law, nor do we feel that the statutes and regulations cited add anything to the rule.

■ ■ The Traudt case also holds that the mere fact that an occurrence may have been foreseeable does not of itself show a breach of any legal duty. The plaintiff alleges and argues that prior to March 29, 1966, the defendant had assumed the duty of rescue by making available a Fire Department helicopter equipped with pontoons and inflatable rubber life rafts and training a crew for the purpose of rescuing occupants of aircraft forced by mishap to land in Lake Michigan reasonably adjacent to Meigs Field. Plaintiff also argues that on two occasions persons were so rescued. In answer to this argument it is sufficient to say that a case of assumption of duties is not made out by pointing to one or two isolated instances where defendant has performed the service which allegedly indicates defendant has assumed the duty.

■ It is worthy of note that at the time of the accident the decedent was not upon Meigs Field. The Illinois courts have declared that a possessor of land does not owe a duty of care to business invitees who are outside the physical premises over which he has possession and

38

control. Stedman v. Spiros, 23 Ill App2d 69, 161 NE2d 590 (1959); Shannon v. High-Low Foods, 261 F2d 48 (7th Cir 1958); Kalil v. Wolldenroot Operating Co., 341 Ill App 58, 92 NE2d 786 (1950). In Stedman, a guest at defendant's hotel fell over a precipice which was not on the hotel premises, but 50 feet away from the hotel building. The court refused to impose a duty upon the defendant with respect to areas beyond the premises owned by defendant, and at page 86 the court said:

"In the present case, the area upon which plaintiff ventured forth and met severe injuries was not occupied or controlled by the defendant and was not under his jurisdiction. . . . To hold defendant liable upon the facts stated in the Amended Complaint would be a radical departure from existing law in this State which we regard as sound."

Also see MacLean v. Parkwood, Inc., 354 F2d 770 (1st Cir 1966).

The cases cited by the plaintiff are not applicable, and we agree with the trial court that the second amended complaint did not state a cause of action; hence, the complaint was properly stricken. The judgment of the Circuit Court is affirmed.

Judgment affirmed.

LYONS and BURKE, JJ., concur.