ELMER BOYLAN, Conservator of the Estate and Person of Douglas Boylan, an Incompetent, Plaintiff-Appellant, *v.* GRACE MARTINDALE, Defendant.— (THE CITY OF ELMHURST *et al.*, Defendants-Appellees.)

Second District  No. 81-323

Opinion filed January 22, 1982.

Noel C. Lindenmuth, Maureen A. Mitchell, Nat P. Ozmon, Dario A. Garibaldi, and Mark Novak, all of Anesi, Ozmon, Lewin and Associates, of Chicago, for appellant.

L. Bow Pritchett, Robert Guritz, and Georgia J. Reithal, all of Illinois Bell Telephone Company, of Chicago, for appellee Illinois Bell Telephone Company.

Barry L. Kroll and Mark Miller, both of Jacobs, Williams and Montgomery, Ltd., of Chicago, for appellee City of Elmhurst.

Rathje, Woodward, Dyer and Burt, of Wheaton, for appellee Commonwealth Edison Company.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff sued defendants Grace Martindale, the City of Elmhurst, Illinois Bell Telephone Company, and Commonwealth Edison Company for injuries suffered by his incompetent in an automobile accident at the intersection of North and Myrtle Avenues in the City of Elmhurst. The trial court dismissed counts III and VI of plaintiff's fourth amended complaint against the city of Elmhurst, counts IV and VII against Illinois Bell Telephone Company, and counts V and VIII against Commonwealth Edison Company, all for failure to state a cause of action. The court also granted Elmhurst's motion for summary judgment on count II of the complaint. The trial court made the necessary finding that there was no just reason for delaying enforcement or appeal of his order. (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a).) Plaintiff now appeals and alleges that the orders of dismissal and summary judgment were erroneously granted. The essential facts as alleged in plaintiff's fourth amended complaint are as follows.

On June 12, 1976, plaintiff's incompetent was a passenger in an automobile being driven by Ronald Camire in an easterly direction on North Avenue in the city of Elmhurst, Illinois. On the same date, Grace Martindale was operating her motor vehicle in a southerly direction on Myrtle Avenue approaching an intersection with North Avenue. The cars collided at the intersection of North and Myrtle Avenues and the car in which plaintiff's incompetent was a passenger had a secondary impact with a wooden utility pole that was located near the intersection.

The basic allegations contained in the relevant counts of plaintiff's fourth amended complaint can be summarized as follows:

Counts II, III, and VI of the complaint were against the city of Elmhurst. Count II alleged that the city had breached its duty in failing to remove certain trees and bushes near the intersection which obstructed the view of approaching drivers. Count III alleged that the city carelessly and negligently permitted the placement of a certain wooden utility pole and other wooden utility poles in a dangerous position along the lateral edge of North Avenue within six to 12 inches from the traveled portion of the highway "knowing that said placement violated standards of design and engineering of highways and their appurtenances and knowingly permitted those wooden utility poles to be continually subjected to collisions with automobiles and collision damage from automobiles traveling to the aforesaid North Avenue." Count VI made essentially identical allegations against the city as in count III but inserted the words wilfully and wantonly for the words carelessly and negligently.

Counts IV and VII of plaintiff's fourth amended complaint were against Illinois Bell Telephone Company. Count IV alleged that the company breached its duty to operate, manage, maintain, and control a certain wooden utility pole located near the intersection of North and Myrtle Avenues by negligently and carelessly placing this pole and other utility poles in a dangerous position along the lateral edge of North Avenue within six to 12 inches from the traveled portion of the highway "knowing that said placement violated standards of design and engineering if [sic] highways and their appurtenances and knowingly permitted those wooden utility poles to be continually subjected to collisions and collision damage from vehicles traveling on the aforesaid North Avenue." Count VII made nearly identical allegations but inserted the words wilfully and wantonly for carelessly and negligently.

Counts V and VIII of the complaint were against Commonwealth Edison Company and contained the same allegations contained in counts IV and VII respectively.

Attached to the city of Elmhurst's motion for summary judgment are certain portions of the transcripts of the depositions of Ronald Camire and Grace Martindale and four photographs of the intersection. No counteraffidavits were filed by plaintiff although five additional pages of Camire's deposition were attached to plaintiff's memorandum in opposition to the summary judgment motion.

Ronald Camire stated in his deposition that the highest speed he was traveling down North Avenue prior to the impact with the Martindale vehicle was 65 miles per hour. He was traveling "just as fast as [he] could" in order to reach a hospital. As he was approximately a block away from the intersection at Myrtle, he began to slow down gradually since the traffic light facing him at the intersection had turned from green to yellow. Camire stated that he had a clear view of the traffic light, but he did not stop because he did not notice any cars on Myrtle Avenue at or near the intersection. Camire looked to see if any cars were "going to jump out." He stated that he "just didn't see" the car with which he collided. Camire approximated his speed at over 40 miles per hour at the time he arrived at the west curb of Myrtle Avenue. He stated that North Avenue is a tree-lined street with trees and bushes on the corners. Trees and bushes on the northwest corner of Myrtle "could be" the reason he didn't see the other car. When he was a block away from Myrtle he could see 20 feet north of North Avenue on Myrtle. Camire testified that he knew he was going to go through the traffic light regardless of what color it was, and he was honking his horn.

Grace Martindale, in her deposition, stated that on the day of the accident, she was stopped at a red traffic light for southbound traffic on Myrtle Avenue at its intersection with North Avenue. She stopped her car

approximately at the white line painted on the street. From that position she had visibility to see eastbound traffic on North Avenue. Nothing obstructed her vision. She looked to her right in a westerly direction and although she could see "a good half block," she did not see any cars approaching. The light turned green, and she looked to the left and right and began to proceed slowly through the intersection. She did not hear anything unusual prior to her collision.

Plaintiff first contends that the trial court's granting of the city's motion for summary judgment on count II of plaintiff's fourth amended complaint was error. Count II alleged, *inter alia*, that the city had breached its duty to properly maintain the intersection of North and Myrtle Avenues by negligently failing to remove trees and bushes obstructing the view of drivers approaching the intersection. A motion for summary judgment should only be granted if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1979, ch. 110, par. 57(3); *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.) It is axiomatic that the purpose of summary judgment proceeding is not to try an issue of fact but to determine whether one exists. (*Wainright v. Truckenmiller* (1981), 96 Ill. App. 3d 1127, 1129-30, 421 N.E.2d 1026.) The right of the moving party must be free of doubt. (*Peterson v. B/W Controls, Inc.* (1977), 50 Ill. App. 3d 1026, 1032, 366 N.E.2d 144.) It is also well established that the question of duty, *i.e.*, whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of the plaintiff, is an issue of law for the determination of the court. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307.) The law applicable to motions for summary judgment which involve the issue of duty is set forth in *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26-27, 305 N.E.2d 535, 538:

> " 'It may be stated generally that if what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered.' (*Fooden v. Board of Governors*, 48 Ill. 2d 580, at 587.) This court has also held that the entry of a summary judgment is proper when only a question of law is involved. (*Allen v. Meyer*, 14 Ill. 2d 284.) Thus, if under the pleadings and affidavits it appears that the defendant owed no duty to the incompetent, the granting of the motion for summary judgment was proper."

Applying the above principles to the facts in this case, we find that the trial court correctly granted summary judgment for the city of Elmhurst on count II of the plaintiff's fourth amended complaint.

■■ In attempting to argue that a material issue of fact exists, much of plaintiff's argument attempts to demonstrate that the view of the two drivers of other traffic approaching the intersection involved was obstructed by the city's failure to remove certain trees and bushes. Although an issue of fact may arguably exist as to whether the diagonal sight lines of motorists approaching the intersection was restricted, we find this to be unrelated to the material issues involved and not a proper basis for denial of summary judgment. The factual issues in dispute must be material to the essential elements of the cause of action or defense and those which are unrelated, regardless of how sharply controverted, do not warrant the denial of summary judgment. (*Schultz v. American National Bank & Trust Co.* (1976), 40 Ill. App. 3d 800, 805, 352 N.E.2d 310.) In order to preclude entry of summary judgment the factual issue must be "material." (*Macmor Mortgage Corp. v. Exchange National Bank* (1975), 30 Ill. App. 3d 734, 740, 332 N.E.2d 740.) Even assuming the existence of the trees and bushes at the intersection as alleged and shown by the exhibits and the depositions before us which describe the view of the two drivers, the focus of our inquiry as to whether a duty exists depends upon other facts which we deem material to the resolution of the issue.

■■ The city does not dispute the fact that it is under a duty to exercise ordinary care to maintain its streets, sidewalks, and adjacent areas in a reasonably safe condition. (Ill. Rev. Stat. 1979, ch. 85, par. 3—102; *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 450, 404 N.E.2d 213; *Hennigs v. Centreville Township* (1974), 56 Ill. 2d 151, 154, 306 N.E.2d 287.) However, regardless of whether or not the drivers' view of the area extending laterally from the intersection was restricted, we believe that, under these circumstances, the city successfully discharged its duty by the maintenance of properly working stoplights at the intersection. Plaintiff does not contend, and the depositions on file in fact refute, that the trees and bushes in the area obstructed or obscured the drivers' views of the stoplights at the intersection. In Ronald Camire's deposition he stated that he began to slow down since the traffic light had turned yellow. Camire stated that he had a clear view of the light from approximately one block away. Similarly, the deposition of Grace Martindale establishes that she clearly observed the traffic signal as she had been stopped at the red light just prior to the collision. In addition, there is no allegation that the traffic control signal was not in proper working order.

The duty imposed on the city is that of ordinary care "to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use

the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ° ° °." (Ill. Rev. Stat. 1979, ch. 85, par. 3—102(a).) A municipality or other public entity may incur liability for failure to maintain the visibility of a traffic control device (*Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 413 N.E.2d 1242) or for failure to keep such devices functioning properly (*Johnston v. City of East Moline* (1950), 405 Ill. 460, 91 N.E.2d 401). In the absence of such traffic control devices, a public entity may have a duty under its own ordinances to maintain an intersection so that it is free of visual obstructions. (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326.) These cases are clearly distinguishable from the case at bar. Plaintiff has cited no authority, nor has our research revealed any, which stands for the proposition that a public entity breaches its duty by allowing an area adjacent to an intersection to pose visual obstructions of traffic to oncoming drivers although there is a clearly visible, properly maintained traffic signal plainly observable to all drivers concerned. In light of the rule that motorists who have a green light may assume that intersecting traffic will obey traffic signals (*Brostoff v. Maida* (1977), 45 Ill. App. 3d 871, 875, 360 N.E.2d 568), it would be entirely reasonable for the city to have believed that it fulfilled its duty to maintain a safe intersection by providing the clearly visible and functioning traffic lights. In this regard we must note that the city is only under a duty of *ordinary* care to maintain its streets in a *reasonably* safe condition. (Ill. Rev. Stat. 1979, ch. 85, par. 3—102(a).) By no means is the city to be considered an insurer against all accidents occurring on the public way. (*Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 294, 393 N.E.2d 725.) Under the particular facts of this case as indicated by the pleadings, depositions, and exhibits, we conclude that, as a matter of law, the trial court could have correctly determined that the city fully discharged its duty by maintaining an unobstructed, properly working traffic signal at the intersection.

However, even assuming the existence of a duty on the part of the city under the circumstances before the trial court on the summary judgment motion, it is clear the trial court also could have concluded, as a matter of law, that the failure to remove the trees and bushes near the intersection furnished merely a condition of the plaintiff's incompetent's injuries and not the proximate cause.

■■ The question of proximate cause is ordinarily one of fact for the jury. (*Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 130, 374 N.E.2d 203.) Yet it is well established that if an alleged negligent act does nothing more than furnish a condition making the injury possible, and such condition, by the subsequent independent act of a third party, causes the injury, the two acts are not concurrent and the condition will not be the proximate cause of the injury. (*Briske v. Village of Burnham* (1942), 379

Ill. 193, 199, 39 N.E.2d 976.) The test for distinguishing between a proximate cause and a condition was articulated by the supreme court in *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665. The court stated:

"The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act. (*Briske v. Village of Burnham,* 379 Ill. 193.) The test that should be applied in all cases in determining the question of proximate cause is whether the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence. (*Seith v. Commonwealth Electric Co.,* 241 Ill. 252.) If the act of a third party is the immediate cause of the injury and is such as in the exercise of reasonable diligence would not be anticipated and the third person is not under the control of the one guilty of the original wrong, the connection is broken and the first act or omission is not the proximate cause of the injury. There may be more than one proximate cause of an injury. But if two wholly independent acts, by independent parties, neither bearing to the other any relation or control, cause an injury by one creating the occasion or condition upon which the other operates, the act or omission which places the dangerous agency in operation is the efficient intervening cause that breaks the causal connection and makes the other act or omission the remote and not the proximate cause of the injury." (381 Ill. 300, 316-17, 45 N.E.2d 665.)

The *Merlo* case has been cited frequently in support of the critical distinction between a condition and proximate cause in situations somewhat analogous to the case here. See, *e.g., Jeanguenat v. Zibert* (1979), 78 Ill. App. 3d 948, 950, 397 N.E.2d 1235; *Wiebel v. Mid-Continent Bottlers, Inc.* (1979), 70 Ill. App. 3d 224, 228, 388 N.E.2d 475; *Waters v. Futuristic Homes, Inc.* (1971), 131 Ill. App. 2d 143, 146, 268 N.E.2d 165.

Illinois cases cited by the plaintiff are distinguishable from the instant case. In *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 392 N.E.2d 716 and *Johnson v. City of Rockford* (1962), 35 Ill. App. 2d 107, 182 N.E.2d 240, it was held that because it was reasonably foreseeable that the plaintiff would be struck by an automobile after being forced to walk in the street in view of obstruction or removal of a sidewalk, the question of proximate cause was one for the jury. The city's conduct in each case was a substantial factor in bringing about harm to the plaintiff. In *Ballard v. Jones* (1974), 21 Ill. App. 3d 496, 316 N.E.2d 281, also relied on by plaintiff, the court found the issue of proximate cause to be a jury question in the light of evidence that a stop sign maintained by the defendant city was obscured by the foliage of trees located on a parkway.

Thus, while all of these cases involve conduct of another party which contributed to the accident, the facts of those cases also indicate conduct on the part of the city which was a substantial factor in bringing about harm to the plaintiff.

■■ In contrast, the alleged failure of the city to clear trees and bushes from the areas adjacent to the intersection controlled by a traffic signal was not a contributing factor to the injury. We conclude that, as a matter of law, the city could not have reasonably foreseen the intervening cause as a natural and probable result of its own alleged negligent omission of failing to keep the areas adjacent to the intersection free of trees and bushes.

Count III of the plaintiff's fourth amended complaint was against the city of Elmhurst for negligently and carelessly permitting the placement of a certain wooden utility pole in a dangerous location along the lateral edge of North Avenue within 6 to 12 inches from the traveled portion of the highway. Count IV was against Illinois Bell Telephone Company for negligently installing and maintaining the utility pole in such a location. Count V made the identical allegations against Commonwealth Edison Company. These counts also allege that the respective defendants knew that the placement of the pole in such a location "violated standards of design and engineering of highways and their appurtenances and knowingly permitted those wooden poles to be continually subjected to collisions and collision damage from vehicles traveling on the aforesaid North Avenue." All these counts also allege that as a result of these negligent and careless acts, plaintiff's incompetent was caused to be injured when the vehicle in which he was a passenger collided with a wooden utility pole at the intersection of North and Myrtle Avenues after being struck by another vehicle being driven by Grace Martindale. The trial court's dismissal of these three counts will be discussed together since the analysis centers on liability for placement of utility poles.

■■■ In reviewing a trial court's order granting a defendant's motion to dismiss a complaint, a court must determine whether the allegations of the complaint, when interpreted in a light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. (*Brooks v. Village of Wilmette* (1979), 72 Ill. App. 3d 753, 756, 391 N.E.2d 133.) A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790.) A motion to dismiss a complaint admits only facts well pleaded, not conclusions of law. (*Geller v. Brownstone Condominium Association* (1980), 82 Ill. App. 3d 334, 336, 402 N.E.2d 807.) The question of duty, *i.e.*, whether the defendant and the plaintiff stood in a relationship to one another that the law imposed upon the defendant

an obligation of reasonable conduct for the plaintiff's benefit, is one of law for determination by the court. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617.) As this court recently stated in *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 724, 423 N.E.2d 519:

> "While the existence of a legal duty is ordinarily considered in terms of foreseeability, the duty is not bottomed on foreseeability alone. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375, 308 N.E.2d 617, 618.) Other factors to be taken into consideration, besides the foreseeability of the possible harm, are the likelihood of injury from the existence of a condition, the magnitude of guarding against it, and the consequences of placing the burden upon the defendant. *Barnes v. Washington* (1973), 56 Ill. 2d 22, 29, 305 N.E.2d 535, 539."

Applying these standards to the trial court's dismissal of the aforementioned counts, we find that there was no error.

Regarding the liability of owners or occupiers of land for artificial conditions created thereon which cause injury to travelers on an adjacent highway, this court has recently cited with favor section 368 of the Restatement (Second) of Torts as being applicable to situations of this kind. (*Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 725-26, 423 N.E.2d 519.) Section 368 provides:

> "A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
>
> (a) are traveling on the highway, or
>
> (b) foreseeably deviate from it in the ordinary course of travel."

Restatement (Second) of Torts §368 (1965).

In *Hoffman* we stated that "[f]or a duty to attach the person must foreseeably deviate in the *ordinary course of travel* * * *." (97 Ill. App. 3d 721, 726, 423 N.E.2d 519.) We declined there to impose a duty upon a defendant utility company that maintained an electric utility pole some 12 to 16 feet off a highway and which was struck by a vehicle driven by the plaintiff administrator's decedent. Particularly relevant there was our statement that:

> "The question of whether a legal duty exists must also be analyzed in view of the public policy favoring placement of utility poles along highway right-of-ways, and the State practice of regulation and approval of such placement. Electric poles are erected and maintained along most roads and streets in this state for a necessary public benefit. Generally, location of these poles in

medians or on public right-of-ways adjacent to a road does not impose liability upon a utility company unless the placement creates a hazard for vehicular travel in the ordinary course of travel. (See *Shapiro v. Toyota Motor Co.* (1978), 38 N.C. App. 658, 248 S.E.2d 868; *Simpson v. City of Montgomery* (1968), 282 Ala. 268, 211 So. 2d 498.) Aware of the undesirable consequences that would flow from imposing a duty upon Edison under the facts of this case, we decline to do so." 97 Ill. App. 3d 721, 727, 423 N.E.2d 519.

Plaintiff, however, cites *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, 150 N.E.2d 643, as authority for his contention that the trial court erred in dismissing counts III through VIII. In *Kubala,* the appellate court held that the trial court had erroneously dismissed plaintiff's complaint for failure to state a cause of action. The complaint in *Kubala* alleged that "the appellees owned land fronting and abutting on the right-of-way of highway 150 at a point where the highway makes a sharp turn; that the appellees erected and maintained a row of concrete posts or guards, two feet by three feet by one foot in dimension, which were painted but not illuminated or reflectorized; that there were no markings to indicate the curve in the road or to warn of the posts; that the posts were capable of injury and had on many occasions injured travelers unintentionally deviating from said highway, unable to traverse said curve, and alleges the posts were, because of their location and condition, a nuisance; that the appellees knew of the posts and location near the road." (17 Ill. App. 2d 463, 468, 150 N.E.2d 643.) The complaint in the case at bar, however, makes no such allegations as to why the placement of the poles was dangerous other than the fact that they were located 6 to 12 inches from the traveled portion of the roadway. There is nothing in the complaint which suggests, for example, that the intersection was such that travelers might deviate from it in the ordinary course of travel and strike the utility pole. In *Kubala,* the complaint specified that the concrete posts were erected at a point where the highway made a sharp turn and that there were no markings to indicate the curve in the road or to warn of the posts. Thus, the mere placement of utility poles 6 to 12 inches from the roadway does not, in and of itself, create an unreasonable risk to others traveling with reasonable care.

We must also note, however, that although plaintiff's complaint additionally alleges that the utility poles lining North Avenue have been "continually subjected to collisions with automobiles," we are unable to ascertain from this conclusory pleading what, if any, particular dangerous roadway condition may have caused automobiles to leave the roadway and collide with the utility poles. No facts are pleaded which indicate that the prior accidents were foreseeable deviations from the roadway in the

ordinary course of travel to give reasonable notice that the positioning of the utility poles presented an unreasonable risk. In addition, the complaint does not allege that the particular pole in question was ever struck before, nor does it correlate the condition, if any, which may have caused other utility poles along North Avenue to be struck by automobiles with any similar condition at the location of this occurrence. It is common knowledge that vehicles collide in roadways and on occasion leave the roadway and strike a utility pole or tree adjacent to the roadway. However, for a duty to third persons to be imposed upon those who erect and maintain such utility poles, there must be a reasonable anticipation of such deviation from the roadway as a normal incident of travel. (Restatement (Second) of Torts §368 (1965); *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 423 N.E.2d 519.) The official comments to the Restatement illustrate the applicability of this rule:

"[The rule] applies also to those who reasonably and expectably deviate from the highway and enter upon the abutting land in the ordinary course of travel. The possessor is required to anticipate the possibility of such deviations and to realize, where a reasonable man would do so, that the traveler so deviating may encounter danger. The public right to use the highway carries with it the right to protection by reasonable care against harm suffered in the course of deviations which may be regarded as the *normal incidents of travel.*" (Emphasis added.) Restatement (Second) of Torts §368, comment *e*, at 269-70 (1965).

"In determining whether the condition is one which creates an unreasonable risk of harm to persons lawfully traveling on the highway and deviating from it, the essential question is whether it is so placed that travelers may be expected to come in contact with it in the course of a deviation reasonably to be anticipated in the ordinary course of travel. Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far. * * * Distance is important, however, only as it affects the recognizable risk; and other factors, such as the nature of the condition itself, its accessibility, and the extent and character of the use of the highway, must be taken into account." (Restatement (Second) of Torts §368, comment *h*, at 271 (1965).)

The pleadings here fail to allege sufficient facts to create such a duty.

Our supreme court has recently addressed the question of the sufficiency of pleadings in *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407. There the court stated:

"Notice pleading, as known in some jurisdictions, is not suffi-

cient under our practice act. (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 8.) Although both sections 42(2) and 33(3) of our practice act contain provisions concerning liberal construction, such provisions do not remedy the failure of a complaint to state a cause of action. In *People ex rel. Kucharski v. Loop Mortgage Co.* (1969), 43 Ill. 2d 150, 152, this court stated:

'This court has repeatedly held that a complaint which does not allege *facts*, the existence of which are necessary to enable a plaintiff to recover does not state a cause of action and that *such deficiency may not be cured by liberal construction* or argument.' (Emphasis added.)" 88 Ill. 2d 407, 426-27.

Plaintiff further argues that the allegation that "said placement violated standards of design and engineering of highways and their appurtenances," coupled with its allegation that utility poles were continually subjected to collisions, is a sufficient pleading to state a duty upon the defendants. Again, however, the failure to particularize or specify the "standards of design and engineering" as they relate to the particular utility pole's placement in question makes this allegation merely conclusory and insufficient to withstand a motion to dismiss. (See *Richardson v. Eichhorn* (1958), 18 Ill. App. 2d 273, 151 N.E.2d 819.) Notice pleading is insufficient under our civil practice act. (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 8, 373 N.E.2d 1326.) Deficiencies in the complaint caused by the failure to allege facts are not cured by provisions in the civil practice act concerning liberal construction. (*People ex rel. Kucharski v. Loop Mortgage Co.* (1969), 43 Ill. 2d 150, 152, 251 N.E.2d 211; *Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 191, 280 N.E.2d 552.) While the complaint does contain certain specific averments of fact, in the absence of other specific allegations as discussed above, they are insufficient standing alone to state a duty owed to plaintiff, which is an essential element of pleading a cause of action.

■■ Plaintiff's allegation of wilful and wanton acts in counts VI, VII, and VIII is essentially identical to that made in the negligence counts except that the words wilful and wanton are substituted for careless and negligent. The mere substitution of the words wilful and wanton for the words careless and negligent before the essentially identical facts alleged in the negligence count does not constitute a sufficient averment of the requisite wilful and wanton state of mind. (*Pendowski v. Patent Scaffolding Co.* (1980), 89 Ill. App. 3d 484, 492, 411 N.E.2d 910; *Ingram v. New York Central R.R. Co.* (1961), 30 Ill. App. 2d 455, 175 N.E.2d 129; but see *Third Swansea Properties, Inc. v. Ockerlund Construction Co.* (1976), 41 Ill. App. 3d 894, 898-99, 354 N.E.2d 148.) These counts do not establish

that defendants acted with either conscious or intentional disregard of a duty owed to plaintiff. *Bernesak v. Catholic Bishop of Chicago* (1980), 87 Ill. App. 3d 681, 686, 409 N.E.2d 287.

Having concluded that these counts do not state a cause of action for failure to sufficiently plead the existence of a duty owed plaintiff, we need not reach the issue whether the allegations were sufficient to plead proximate cause.

Accordingly, the judgment of the circuit court of Du Page County is affirmed in all respects.

Affirmed.

LINDBERG and NASH, JJ., concur.