MARIANNE KAVANAUGH, Indiv. and as Special Adm'r of the Estate of Thomas Kavanaugh, Deceased, Plaintiff-Appellant, v. MIDWEST CLUB, INC., *et al.,* Defendants-Appellees (The County of Du Page, Defendant).

Second District No. 2—87—0164

Opinion filed December 18, 1987.

James J. Reidy, Ltd., of Chicago (Donald J. Angelini, Jr., of counsel), for appellant.

D. Kendall Griffith and Adam S. Kreuzer, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Kathryn A. Spalding, of counsel), for appellee Midwest Club, Inc.

Joseph F. Hickey and Janella L. Barbrow, both of Judge & Knight, Ltd., of Park Ridge (Sarah Hansen Sotos, of counsel), for appellee Village of Oak Brook.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Marianne Kavanaugh, administrator of the estate of her deceased husband, Thomas Kavanaugh, brought this wrongful death and survival action against defendants, Midwest Club, Inc., Village of Oak Brook (Oak Brook), and Du Page County, arising out of an occurrence in which her husband suffered an epileptic seizure while driving a vehicle, which then left the highway and became submerged in a retention pond on Midwest Club's property, thereby resulting in his death by drowning. This interlocutory appeal by plaintiff under Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) arises from an order dismissing the counts against Midwest Club and Oak Brook pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985,

ch. 110, par. 2—615). The trial court found that no duty to plaintiff's decedent was owed by Midwest Club and that the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*) barred recovery against Oak Brook. Du Page County is not a party to this appeal, and the counts against it are pending in the trial court.

On appeal, plaintiff contends that Midwest Club owed a duty of ordinary care under the circumstances because it was foreseeable that a vehicle could leave the highway and enter the retention pond or, if not foreseeable, the duty of ordinary care was owed because the deceased left the highway out of private necessity and therefore he was a rightful entrant upon Midwest Club's property. As against Oak Brook, plaintiff maintains that police officers of Oak Brook were negligent in their voluntary rescue attempt and that the provisions of the Tort Immunity Act do not apply.

Plaintiff's third amended complaint, in pertinent part, alleges the following. On November 29, 1984, Mr. Kavanaugh was driving a vehicle east on 31st Street in the Village of Oak Brook. Midwest Club owned and maintained a retention pond located in the vicinity of 31st Street and Midwest Road. After Kavanaugh suffered an epileptic seizure, his vehicle left the roadway, entered the retention pond, and became completely submerged.

Thereafter, an off-duty security guard of Midwest Club telephoned the Oak Brook police department and informed them of the incident. Several officers were dispatched to the scene, none of whom carried the equipment necessary to perform underwater rescue.

Upon their arrival at the scene, the officers unsuccessfully attempted to rescue Kavanaugh, who was still alive, from his submerged vehicle. After the failed attempt, the Oak Brook police department requested assistance from the Lisle-Woodridge Recovery Team. The subsequent rescue efforts were also unsuccessful.

In the two counts against Midwest Club, plaintiff alleges that Midwest Club owed a duty to use reasonable care for the safety of Kavanaugh and was negligent by failing to erect guards or barriers around the retention pond, by failing to design the retention pond in a safe manner, by locating the retention pond too close to 31st Street, and by failing to erect a fence between the retention pond and 31st Street. The one count against Oak Brook alleges that upon dispatching the police officers to the scene of the incident, Oak Brook voluntarily undertook to rescue Kavanaugh and assumed the duty to perform the rescue without negligence. It further alleges that Oak Brook was negligent in delaying the arrival of trained water rescue person-

nel and by dispatching personnel with no diving or water rescue gear and no training in water rescue.

Following the filing of motions to dismiss by Midwest Club and Oak Brook, the trial court dismissed all the counts against these parties, finding that Midwest Club owed no duty towards plaintiff's decedent and that the Tort Immunity Act prevented the action against Oak Brook as pleaded.

Plaintiff contends that Midwest Club owed Kavanaugh a duty of reasonable care to maintain and guard the retention pond because it was foreseeable that a motor vehicle, in its ordinary course of travel, could leave the roadway and enter the pond. Midwest Club responds to the contrary and argues further that public policy considerations compel a finding of no duty requiring a landowner to prevent vehicles from coming in contact with natural or artificial conditions located near a roadway.

■■ ■ In determining whether a motion to dismiss was properly allowed, all well-pleaded facts will be regarded as true (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 514, 513 N.E.2d 387, 390), and all reasonable inferences should be construed in the plaintiff's favor. (See *Katz v. Belmont National Bank* (1986), 112 Ill. 2d 64, 67, 491 N.E.2d 1157, 1158.) A cause of action should not be dismissed unless it clearly appears from the pleadings that no set of facts can be proved which will entitle plaintiff to recover. *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 286, 499 N.E.2d 1319, 1322.

■■ ■ To be legally sufficient, a complaint for negligence must set out facts that establish the existence of a duty owed by defendant to plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*Kirk*, 117 Ill. 2d at 525, 513 N.E.2d at 395-96.) The determination of whether a duty exists is an issue of law to be determined by the court. (*Kirk*, 117 Ill. 2d at 525, 513 N.E.2d at 396.) Reasonable foreseeability of harm is a key concern in determining whether a duty exists, although the court should also consider the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing the burden on the defendant. *Kirk*, 117 Ill. 2d at 526, 513 N.E.2d at 396.

This court, in *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 431 N.E.2d 62, addressed the issue of the duty owed by an owner or occupant of land to the occupant of a motor vehicle to protect against the harm resulting from the vehicle leaving the roadway and coming in contact with an artificial condition adjacent to the roadway. In *Boylan*, the court relied, in part, on section 368 of the Restatement (Sec-

ond) of Torts when establishing the duty under these circumstances. (103 Ill. App. 3d at 344, 413 N.E.2d at 69.) Section 368 provides:

"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

 (a) are traveling on the highway, or

 (b) foreseeably deviate from it in the ordinary course of travel." Restatement (Second) of Torts §368 (1965).

■ For a duty to attach, the person to whom it is owed must foreseeably deviate from the roadway in the ordinary course of travel. (*Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 344, 431 N.E.2d 62, 70.) The complaint must allege facts that demonstrate that the condition of the roadway is such that a vehicle is likely to deviate from it in the ordinary course of travel and come in contact with the artificial condition. (103 Ill. App. 3d at 345, 431 N.E.2d 62, 70; see also *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 726, 423 N.E.2d 519, 523.) As stated in comment *g* of section 368 of the Restatement (Second) of Torts, "[t]he distinction is thus not one between inadvertent and intentional deviations, but between those which are normal incidents of travel and those which are not." Restatement (Second) of Torts §368, comment *g*, at 270 (1965).

■ In the instant case, plaintiff argues that Midwest Club owed her deceased husband a duty to protect him from injury because it is reasonably foreseeable that a vehicle would deviate from its ordinary course of travel on 31st Street and enter the retention pond. The complaint, however, sets forth no allegations as to why the location of the retention pond involves an unreasonable risk beyond the fact that it was in the vicinity of 31st Street. There are no allegations, for example, that the pond was located near a sharp curve in the roadway (*Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, 468, 150 N.E.2d 643, 645) or opposite a "T" intersection in the roadway (*Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 281, 293 N.E.2d 483, 486), which might make it likely that the vehicle would deviate from the roadway in the ordinary course of travel and come into contact with the pond. The bare allegation that Midwest Club happened to locate its retention pond "in the vicinity of" this particular stretch of roadway, by itself, without an allegation of a condition peculiar to the roadway, does not create a duty to protect the occupants of vehicles

which, by happenstance, or, as is the case here, when the driver has an epileptic seizure, leaves the roadway and enters the pond.

Plaintiff also argues that it was reasonably foreseeable to Midwest Club that a motor vehicle could leave 31st Street and enter the retention pond because two years prior to this occurrence another motor vehicle left 31st Street and entered the same retention pond. Although referred to in legal briefs in the trial court, no such allegation is contained in the amended complaint, and we cannot consider facts not well pleaded. (See *Teter v. Clemens* (1986), 112 Ill. 2d 252, 256-57, 492 N.E.2d 1340, 1342.) In any event, as the court in *Boylan* noted, the question of whether a duty exists must be analyzed in light of public policy concerns. (*Boylan*, 103 Ill. App. 3d at 344, 431 N.E.2d at 70; see *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 526, 513 N.E.2d 387, 396.) Such concerns include the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant. 117 Ill. 2d at 526, 513 N.E.2d at 396.

Based on the pleadings in this case, it would be unreasonable to impose a duty upon Midwest Club, which located a retention pond "in the vicinity of" 31st Street, to implement the precautions necessary to prevent vehicles, that might leave the roadway for any number of reasons, from entering the retention pond. In addition to plaintiff's failure to allege any condition of the roadway that is likely to cause a vehicle to deviate therefrom in the ordinary course of travel and to come in contact with the artificial condition, there are no allegations of where the retention pond was in relation to 31st Street. "Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far." (Restatement (Second) of Torts §368, comment *h*, at 271 (1965).) Thus, the pleadings here fail to allege sufficient facts to create a duty.

Plaintiff, additionally, maintains that, even if the deceased did not foreseeably deviate from 31st Street in the ordinary course of travel, Midwest Club still owed him the duty of ordinary care because he left the roadway out of private necessity and was, therefore, a rightful entrant upon Midwest Club's property. Plaintiff relies on *West v. Faurbo* (1978), 66 Ill. App. 3d 815, 384 N.E.2d 457, to support this argument.

A close examination of the *West* decision indicates, however, that the appellate court affirmed the trial court's granting of summary judgment for the defendant and, in applying section 368 of the Restatement (Second) of Torts, regarded the swerving off of the public

sidewalk four or five feet in order to avoid colliding with a moving automobile as neither an incidental deviation from the sidewalk nor an ordinary incident of travel. (*West*, 66 Ill. App. 3d at 818, 384 N.E.2d at 459.) While other language in the opinion refers to a private necessity to enter someone else's land for the purpose of protecting one's own interests (*West*, 66 Ill. App. 3d at 817, 384 N.E.2d at 458), this statement is made in the context of distinguishing between a person's status as trespasser and a licensee, without reference to that person's travel onto the property from a nearby highway. Even assuming the applicability of this language to a situation involving travel along an adjacent highway, the facts are inapposite to *West* where, here, plaintiff's decedent did not leave the roadway out of private necessity to protect his own interest, but, instead, deviated due to an apparent involuntary epileptic seizure. Thus, this theory, as well, does not support a cause of action, and the two counts of the complaint against Midwest Club were properly dismissed by the trial court for the failure to state a cause of action.

Contending that count V of the amended complaint against Oak Brook was improperly dismissed, plaintiff argues that, by dispatching police officers to the accident scene, Oak Brook voluntarily undertook the duty to rescue Kavanaugh and, therefore, owed him the duty of ordinary care in performing the attempted rescue. Plaintiff further maintains that Oak Brook was negligent in performing the voluntary rescue attempt by failing to dispatch personnel who had proper water rescue training and gear.

Oak Brook makes several responses. First, it contends that the amended complaint insufficiently alleges a legal duty to effectuate a rescue of Kavanaugh under the circumstances and, even assuming a rescue attempt was made, the amended complaint fails to allege facts necessary to establish Oak Brook's negligence in attempting the rescue. Second, Oak Brook contends that it cannot be liable for failing to furnish a governmental service such as police protection and rescue services, citing section 4—102 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 4—102). Third, Oak Brook posits that a public employee is not liable for its act or omission in the execution or enforcement of any law unless such act or omission constitutes wilful and wanton negligence under section 2—202 of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 2—202).

Neither party cites, nor does our research indicate, any Illinois case law addressing a municipality's duty involving similar circumstances. Generally, a municipality is not liable for its failure to supply police protection except where the municipality is under a spe-

cial duty to a particular individual. (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 363, 243 N.E.2d 214; *Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 277, 490 N.E.2d 77, 84.) It has also been held in two dated Illinois Appellate Court decisions that a municipality has no duty to rescue another in distress where no rescue was attempted. See *Bishop v. City of Chicago* (1970), 121 Ill. App. 2d 33, 38, 257 N.E.2d 152, 154-55; *Traudt v. City of Chicago* (1968), 98 Ill. App. 2d 417, 424, 240 N.E.2d 188, 191-92.

The general rule that a municipality is not liable for its failure to supply police protection is embodied in section 4—102 of the Tort Immunity Act. (*Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 277, 490 N.E.2d 77, 84; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 506, 475 N.E.2d 960, 961.) Section 4—102 provides:

> "Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, *for failure to provide adequate police protection or ser-vice,* failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee." (Emphasis added.) Ill. Rev. Stat., 1986 Supp., ch. 85, par. 4—102.

 Pertinent to the issue before us, we believe the clause in section 4—102 granting immunity "for failure to provide adequate police protection or service" includes the services alleged to have been undertaken by the Oak Brook police officers. While the case law in Illinois has generally examined the immunity granted in section 4—102 in the context of the traditional police role of law enforcement, police protection, and apprehension of criminals, we conclude that the phrase "adequate police protection *or service*" (emphasis added) in section 4—102 includes the police function of responding to a call of a traffic matter involving a motor vehicle that had been driven off the roadway and into a nearby retention pond, as alleged here. Police service, in this context, may also include police aid, assistance, or rescue. Because these functions are commonly recognized as an important part of police services, we believe that the legislature intended to grant immunity for this type of service as well as for police protection.

As in the case of police protection, where the legislature has granted immunity from inadequate police action on public policy con-

siderations that a police department's negligence, oversights, blunders or omissions are not the proximate or legal cause of harms committed by others (*Schaffrath v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 999, 1005-06, 513 N.E.2d 1026, 1028), we conclude that this same public policy consideration is present here, where the police responded to a call for assistance in a traffic matter.

 While the duty of police to preserve a community's well-being and to prevent the commission of crimes is owed to the public at large, not to specific individuals, and is the reason for the public policy allowing immunity under these circumstances, an exception arises where the police have assumed a special relationship or are under a special duty to an individual which elevates his status beyond that of a member of the general public. (*Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 295, 514 N.E.2d 515, 518; *Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 278, 490 N.E.2d 77, 84; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 506-07, 475 N.E.2d 960, 961-62.) Four elements comprise this "special duty" exception, as follows:

> "(1) the municipality must be uniquely aware of ·the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or wilful in nature; and (4) the injury must occur while plaintiff is under the direct and immediate control of employees or agents of the municipality. [Citations.]" *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 507, 475 N.E.2d 960, 962.

See also *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 1065, 467 N.E.2d 1153, 1157.

 In the case at bar, even assuming plaintiff has satisfied the first three requirements, plaintiff has made no allegations which lead to the conclusion that the death of plaintiff's decedent occurred while he was under the direct and immediate control of the Oak Brook police officers. Rather, she alleges that the police attempted to rescue decedent, but were unable to do so because of a lack of trained water rescue personnel and water rescue gear. Thus, the amended complaint fails to show a "special duty" relationship between the parties. (*Cf. Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 378-79, 219 N.E.2d 147, 150 (police accompanied plaintiff who was beaten up by suspects in police custody).) We, therefore, agree with the trial court that the Act applies and the amended complaint against Oak Brook was properly dismissed.

Although Oak Brook advanced several alternative arguments to support the trial court's decision, in view of our disposition of the case, we need not address them except for a brief comment. Oak Brook asserted the limited immunity provision contained in section 2—202 of the Act. That provision grants immunity to a public employee for an "act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence." (Ill. Rev. Stat. 1985, ch. 85, par. 2—202.) The difficulty we have in accepting that contention at this pleading stage of the proceeding is that there is no evidence of what law the Oak Brook police were executing or enforcing to support this immunity defense. See generally *Thompson v. City of Chicago* (1985), 108 Ill. 2d 429, 433, 484 N.E.2d 1086, 1087-88; *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, 33-34, 282 N.E.2d 144, 148.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG, P.J., and INGLIS, J., concur.