JOSEPH LEANE, Special Adm'r of the Estate of Patricia Leane, Deceased, Plaintiff-Appellant, v. JOSEPH ENTERTAINMENT GROUP, INC., Defendant-Appellee (Terry Cullen, d/b/a RTM Heavy Security Company, *et al.*, Defendants).

First District (5th Division)   No. 1—93—2427

Opinion filed November 4, 1994.—Rehearing denied December 1, 1994.

A. Denison Weaver and Thomas J. Gorman, both of A. Denison Weaver, Ltd., of Chicago, for appellant.

Swanson, Martin & Bell, of Chicago (Kay L. Schichtel and Kevin V. Boyle, of counsel), for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Joseph Leane, as special administrator of the estate of Patricia Leane, deceased (Leane), appeals from the dismissal of his wrongful death complaint against the Joseph Entertainment Group (JEG), with prejudice.[1] Leane raises two issues on appeal: (1) whether the trial court erred in finding that JEG owed no duty to Leane, and (2) whether the trial court erred when it denied Leane's motion for leave to amend the complaint.

_____
[1]The other defendants named above are not a part of this appeal.

The facts of this case are as follows.

The defendant, JEG, is a Delaware corporation alleged to have been in possession and control of the premises known as Alpine Valley Music Theater (Alpine Valley), an outdoor amphitheater located in Walworth County, Wisconsin. On July 21, 1990, Patricia Leane attended a rock concert at Alpine Valley and, while attending this concert, suffered an acute respiratory attack[2] and died.

In the wrongful death complaint, plaintiff alleged that JEG owed Patricia a duty of care, that they breached that duty by (a) failing to provide adequate medical facilities, (b) failing to have a qualified emergency care medical director readily accessible, (c) failing to have a sufficient number of first aid stations on the premises, (d) failing to have an advanced life support team available on the premises, (e) failing to have a sufficient number of nurses and paramedics on the premises, (f) failing to equip the concession stands with a means of communicating with the medical care facilities, (g) failing to provide for easy accessibility to the medical care facility on the premises, and (h) failing to provide emergency medical care within a reasonable period of time.

JEG moved to dismiss the complaint pursuant to sections 2—615 and 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, pars. 2—615, 2—619; 735 ILCS 5/2—615, 2—619 (West 1992)) on the grounds that the complaint failed to state a cause of action. Specifically, JEG argued that under the facts of the case it had no duty, as a matter of law, to provide medical assistance to Patricia for a condition unrelated to the status of its premises. In addition, JEG attached to its motion the affidavit of Dr. Alan Leff, the head of the pulmonary and critical care medicine section of the University of Chicago. According to this affidavit, Dr. Leff reviewed the Alpine Valley injury report, the ambulance report, the coroner's report and the autopsy report for Patricia Leane. Based upon these documents, Dr. Leff opined that Patricia suffered a spontaneous tension pneumothorax.[3] According to Dr. Leff, the only effective treatment for this condition is the insertion of a chest tube or large bore needle

---

[2]Leane does not contend that Patricia's acute respiratory attack was caused in any way by a condition of the Alpine Valley premises. It appears, instead, that the attack was due to a preexisting asthma condition.

[3]A pneumothorax is a condition which occurs when a rupture of the lung tissue allows air to escape into the chest cavity. When this happens the air cannot be exhaled, it builds up pressure within the chest cavity and then collapses the lungs. Dr. Leff believed that a rupture of Patricia's lung tissue occurred suddenly and spontaneously due to her longstanding asthma condition.

into the chest cavity to release the trapped air, a procedure which must be performed within a few minutes of the pneumothorax by a qualified and trained physician. Thus, JEG argued, even if it had some duty to provide medical assistance, it had no obligation to provide the type of advanced medical care that would have been necessary in this instance.

In response Leane argued that, under the Restatement of Torts (Second), section 314A (Restatement (Second) of Torts § 314A (1965)), which has been adopted by Illinois, JEG had a duty to provide first aid to its business invitees, and that it breached that duty by failing to provide emergency medical assistance to its patron, who had a reasonably foreseeable medical emergency. In support of this position, Leane attached the affidavit of Dr. Stanley Zydlo, the chief of emergency medicine at Northwest Community Hospital and project director of the Northwest Suburban E.M.S. System. Dr. Zydlo stated that he had reviewed the same documents relied upon by Dr. Leff, in addition to a summary of the unsworn statements of individuals with Patricia when she suffered the attack.[4] Dr. Zydlo concurred with Dr. Leff's diagnosis that Patricia suffered a tension pneumothorax and he also agreed that the proper treatment would be needle decompression. However, he opined that the needle decompression procedure could be performed by a trained paramedic. Dr. Zydlo further opined that when people are gathered at large-scale events, such as the outdoor concerts at Alpine, it is reasonably foreseeable that persons will suffer acute respiratory distress brought on by asthma and that facilities such as Alpine should provide adequate emergency first aid stations, accessible within minutes, and staffed by trained paramedics who can perform the needle decompression treatment.

Subsequently, Leane filed the additional affidavit of Chet Lloyd, a "certified safety professional specializing in risk control and crisis management for sports and entertainment facilities." The affidavit stated that Lloyd had conducted an investigation of the safety and emergency preparedness at Alpine Valley and compiled a report, which was attached to the affidavit. Lloyd expressed the opinion that, based upon statistical data, it is probable that a sports or entertainment facility will experience one medical emergency per hour for every 10,000 to 20,000 patrons in attendance. In light of that statistical probability, he expressed the opinion that sports and entertainment facilities should provide a number of emergency stations, easily accessible, and staffed by trained and certified personnel acting under the direction of a physician.

---

[4]We note here that none of the documents relied upon by the affiants have been made a part of the record.

At the hearing on the motion to dismiss held June 8, 1993, plaintiff's counsel indicated that when Patricia began to experience her respiratory attack she sought first aid. Patricia was told that paramedics present at Alpine Valley wouldn't come to her. Instead, she was directed to go to one of Alpine Valley's first aid stations where paramedics were located. Patricia, accompanied by some friends, made their way to a first aid station. But the medical assistance she received at the aid station was inadequate and they were unable to save her.

Considering this information along with the complaint, motions and affidavits, the trial court dismissed the complaint against JEG, finding that JEG owed no duty to provide Patricia Leane with the advanced medical care that she required. Leane's counsel made an oral motion that the dismissal be without prejudice so that an amended complaint might be filed "to allege that defendant knew or should have known through its agents, servants or employees, that plaintiff Patricia Leane was ill and was in need of first aid and that no first aid whatsoever was provided to her." The trial court denied the oral motion, finding that the law doesn't require a landowner to provide first aid, but merely take reasonable steps to see that medical attention is obtained or that someone competent has taken charge of the situation. Since the evidence indicated that Patricia was accompanied by friends who were assisting her, Alpine had no further duty to assist.

Leane appeals and asks this court to find that the trial court erred in dismissing the complaint against JEG. Leane declares that it is an issue of first impression in Illinois whether a possessor of land owes a business invitee a duty to provide medical care and the degree of care that must be provided. Leane urges this court to find that JEG owed a duty to its business invitees to provide "adequate emergency medical facilities," defining "adequate emergency medical facilities" as that medical assistance necessary in light of the circumstances and nature of the business conducted. In this case, Leane argues that "adequate emergency medical facilities" should include advanced medical assistance because, given the large number of persons attending concerts at the rural amphitheater, it was reasonably foreseeable (and statistically probable) that someone would experience a medical emergency and that the magnitude of the burden on Alpine would not be great considering the fact that Alpine already had in place "skeletal emergency medical facilities." In addition, Leane argues that, to the extent that the issue of proximate cause is raised by Dr. Leff's affidavit, that issue should be decided in its favor since Dr. Zydlo's affidavit indicated that trained paramedics

(rather than physicians) could have performed the needle decompression procedure that was necessary in this case.

Finally, Leane argues that the trial court erred in dismissing the cause of action with prejudice. Leane claims that his counsel proposed an amendment to the complaint that JEG, having voluntarily assumed the duty to provide medical assistance, breached that duty by providing inadequate facilities and by failing to provide the care necessary within a reasonable time after Patricia experienced her acute respiratory attack. Leane claims that this proposed amendment should have been allowed by the trial court and would have precluded the grant of dismissal.

JEG, on the other hand, maintains the position that the issue of a landowner's duty to a business invitee is not an issue of first impression and that Illinois case law has already defined the scope of duty that a landowner owes a business invitee. Citing *Parra v. Tarasco, Inc.* (1992), 230 Ill. App. 3d 819, 595 N.E.2d 1186, *Bishop v. City of Chicago* (1970), 121 Ill. App. 2d 33, 257 N.E.2d 152, and *Traudt v. City of Chicago* (1968), 98 Ill. App. 2d 417, 240 N.E.2d 188, JEG contends that Illinois law has consistently held that a landowner does not have a duty to rescue an invitee from any danger not caused by a condition of the land. Applying these principles to this particular case, JEG argues that Patricia was not harmed by a condition on the land and Leane never alleged in the complaint that JEG knew or had reason to know that Patricia was ill; therefore, no duty ever arose.

JEG concedes that the *Parra* case acknowledged that, under the Restatement of Torts (Second), section 314A, comment *f*, a possessor of property may have a minimal duty to take steps to obtain medical care for an invitee who it knows or has reason to know is injured. (Restatement (Second) of Torts, § 314A, Comment *f*, at 120 (1965).) Thus, in the event that this court should find that some duty was owed pursuant to the principles espoused in comment *f* of the Restatement, JEG urges this court to refrain from expanding the scope of duty to the "insurmountable duty" to provide advanced medical assistance, claiming that to do so would have far-reaching and undesirable consequences. JEG argues that, if it were assumed that JEG had knowledge of Patricia's sudden attack, the only duty JEG had was to take appropriate action under the circumstances. The duty would not extend to include the need to provide advanced medical services.

In further support of its position, JEG argues that if this court were to weigh the factors generally used by Illinois courts when deciding whether to impose a duty, *i.e.*, the foreseeability of injury,

the magnitude of the burden being placed on the defendant and the consequences of placing the burden on the defendant, these factors would militate against the imposition of a duty on JEG under the facts of this case. JEG cautions this court against exchanging statistical probabilities for the traditional foreseeability question.

Finally, JEG argues that the trial court did not err in denying Leane's orally proposed amendment to the complaint for two reasons: (1) Leane mischaracterizes the nature of the proposed amendment, and (2) because the amendment that was proposed would not have cured the defect in the complaint.

Initially, we find that JEG is correct when it states that Leane mischaracterizes the nature of his proposed amendment. As can be seen from the quoted comments in the statement of facts above, the amendment to the complaint orally proposed by Leane's counsel at the time the trial court dismissed the complaint did not encompass the voluntary undertaking theory (the question of whether JEG voluntarily chose to provide medical assistance, but did so negligently). Thus, this theory was neither pled in the complaint nor argued in opposition to the motion to dismiss. For this reason we agree that Leane's actions constitute a waiver of this argument on appeal. (See *Wilson v. Gorski's Food Fair* (1990), 196 Ill. App. 3d 612, 554 N.E.2d 412.) We, therefore, find that our review in this appeal should be limited to the question of whether a duty exists under the facts alleged and whether the trial court erred in finding that Leane failed to state a cause of action.

Before we can address the merits of the issue, however, we choose to consider, on our own motion, an issue not argued by either party, *i.e.*, the applicability of Illinois law to this case. The trial court raised this issue with the parties and the following colloquy took place:

"THE COURT: Let me interrupt a minute. This all happened in Wisconsin. Both sides agree that Illinois law should apply?

MS. SCHICTEL [Defense Counsel]: Yes, your Honor.

MR. GORMAN [Plaintiff's Counsel]: At this time, yes, your Honor. Without any further discovery, yes."

Shortly thereafter the court dismissed the case pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure. Ill. Rev. Stat. 1991, ch. 110, pars. 2—615, 2—619; 735 ILCS 5/2—615, 2—619 (West 1992).

At oral argument this court again raised the issue of the applicable law. However, this court was no more successful in ascertaining the parties' basis for applying Illinois law to this case. The parties, apparently agreeing to apply Illinois law, believe that such an agreement is sufficient. It is not.

As stated in *In re Marriage of Adams* (1990), 133 Ill. 2d 437, 551 N.E.2d 635, a trial court is not bound to follow the parties' stipulation that this State's law governs their case because litigants have no authority to choose, by stipulation, the law applicable to a particular case if their selection is unreasonable. The parties' stipulation that a certain State's law governs the case will be deemed unreasonable if it is contrary to the result that would be reached through application of the customary choice-of-law principles. *In re Marriage of Adams*, 133 Ill. 2d at 446-47.

In deciding choice-of-law questions, Illinois has adopted the choice-of-law analysis contained in section 145 of the Restatement (Second) of Conflict of Laws (1971). (*Nelson v. Hix* (1988), 122 Ill. 2d 343, 522 N.E.2d 1214.) Section 145 of the Restatement (Second) of Conflict of Laws (1971) states:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Adhering to these principles, Illinois will typically apply the law of the State where the tort occurred unless Illinois has a more significant relationship with the occurrence or with the parties, in which case Illinois law will be applied. *Kwasniewski v. Schaid* (1992), 153 Ill. 2d 550, 607 N.E.2d 214; *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593.

In the present case the occurrence and conduct allegedly causing injury took place in Wisconsin, at the Alpine Valley Music Theater. Although plaintiff is an Illinois resident, defendant is a Delaware corporation operating in Wisconsin, which, plaintiff alleges, by virtue of its ownership or possession of the Wisconsin property, owed plaintiff's deceased a duty to provide medical care.

Assessing the contacts in light of their relative importance with respect to the issue in this case, it is difficult to find that Illinois has a more significant relationship with this occurrence or the parties, giving Illinois a substantial interest in deciding this case under its

own laws. In fact, since plaintiff's case involves the question of the scope of a landowner's duty to its business invitees, we think that the situs of the land is the most significant factor to consider when deciding what law to apply. For this reason, we find that Wisconsin law, not Illinois law, should apply to this case and decline to accept the parties' stipulation that Illinois law applies to this controversy.

Because the trial court dismissed the cause of action applying what we have determined to be incorrect law and because the parties have relied heavily on Illinois law in their briefs and arguments before this court, we find it necessary to reverse the decision of the trial court and remand for further proceedings.

As an aside we note that, because remand is necessary, the parties will also have the opportunity to address several issues that this court raised during oral argument which were not adequately addressed by either party, despite the fact that the parties were given leave to provide this court with supplemental briefs after oral argument. The issues that the parties may wish to speak to are those raised in the case *Lundy v. Adamar of New Jersey, Inc.* (3d Cir. 1994), 34 F.3d 1173, a case factually similar to the case at bar, discovered by this court in researching this case and brought to the attention of the parties.

Reversed and remanded.

GORDON and McNULTY, JJ., concur.